PATRICIA A. SEITZ, UNITED STATES DISTRICT JUDGE
THIS MATTER is before the Court on Movant Ralph Curry's Motion for Relief from Mandate [DE 36], the Government's Response [DE 38], and the parties' supplemental briefing [DE 42; DE 43]. Citing the Eleventh Circuit's recent published opinion in United States v. Pickett , 916 F.3d 960 (2019), Mr. Curry argues that the mandate is no longer viable and that a different result is required in his case. The Government maintains that Pickett does not apply and that the Court must follow the mandate, requiring Mr. Curry to return to prison for the last fifteen years of his original sentence. After careful review of the record, Pickett , and the parties' arguments, *1098 the Court finds that Pickett applies and that Mr. Curry meets the Beeman standard. For the reasons stated below, the Court finds the most judicious approach is to grant Mr. Curry's Motion.
Background
I. Initial Sentencing
On April 25, 2005, Mr. Curry was arrested for possession of 3.3 grams of cocaine base and 1.2 grams of powder cocaine, and a firearm as a felon. [Presentence Investigation Report ("PSR") ¶ 8.] Based on a jury verdict, on November 10, 2005, the Court sentenced Mr. Curry to a 322-month prison term[1] for: Count 1 - Possession with intent to distribute "crack," 21 U.S.C. §§ 841(a)(1) and 851 ; Count 2 - Possession with intent to distribute cocaine, §§ 841(a)(1) and 851 ; Count 3 - Carrying a firearm during or in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A) ; and Count 4 - Possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1) and 924(e)(1). [CR-DE 56.[2] ]
In applying the Armed Career Criminal Act (ACCA) penalties, the PSR only referenced a 1991 conviction in Georgia for three counts of aggravated assault.[3] [PSR ¶ 37.] The PSR also included the following prior convictions: (1) Florida second-degree grand theft and burglary of a structure in 1985; (2) Florida third-degree grand theft and burglary of a dwelling in 1989; and (3) Florida possession with intent to sell or purchase cocaine, and the sale, purchase or delivery of cocaine in 1989. [PSR ¶¶ 25, 29, 30.]
II. Leave to File Current § 2255[4] and the Magistrate Judge's Report
On June 3, 2016, Mr. Curry sought leave from the Eleventh Circuit to pursue a successive § 2255 motion in light of Johnson v. United States , --- U.S. ----, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), which held that the ACCA's residual clause was unconstitutional. On July 1, 2016, the Eleventh Circuit granted leave, finding that Mr. Curry could only have two qualifying ACCA offenses, the Georgia assault conviction and the Florida drug conviction, and thus he made a prima facie showing that the Court may have relied on the ACCA's residual clause. [Case No. 16-13231, Order Granting Application, at 7 (11th Cir.).]
Mr. Curry filed his Amended § 2255 Motion on September 1, 2016 asserting his burglary convictions no longer qualified as ACCA crimes of violence and that his Georgia conviction for aggravated assault may have been improperly counted as multiple ACCA offenses. [DE 10; DE 11.] On October 14, 2016, the Magistrate Judge's Report recommended granting the Motion on two bases: (1) Mr. Curry met the burden of proof outlined in In re Chance , 831 F.3d 1335 (11th Cir. 2016), requiring a showing that the sentencing judge may have used the residual clause;[5] and (2)
*1099 Florida burglary no longer qualified under the ACCA because Florida defines "burglary" more broadly than the ACCA's enumerated clause. [DE 14.]
III. Court's Order Granting the § 2255
On November 30, 2016, this Court granted Mr. Curry's § 2255 Motion, finding he met the In re Chance standard and that there was a "reasonable likelihood" his sentence was "in fact" based on the residual clause. [DE 16 at 7 n.8.] The Court noted that because there was long-standing precedent that Florida burglary encompassed both generic and non-generic burglary, courts were required to articulate a reason for enhancing a sentence under the enumerated clause. [ Id ]
At the December 21, 2016 re-sentencing, the Court considered that Mr. Curry had no disciplinary actions, held responsible work positions, finished his GED, ministered spiritually to others, and obtained a culinary degree. [CR-DE 104, Sent. Tr., 8:11-20.] Because Mr. Curry had a Criminal History Category III, the guideline range was 111-123 months' imprisonment. [Id. 4:22-25; 5:1-4.] Thus, because Mr. Curry had already served 139 months and 27 days, the Court re-sentenced him to time served with a six-year term of supervised release. [CR-DE 96.]
IV. Government's Appeal and Beeman v. United States
On February 17, 2017, the Government appealed the granting of the § 2255 Motion. [DE 99.] On September 22, 2017, before the Government's reply was due, the Eleventh Circuit issued Beeman v. United States , 871 F.3d 1215 (11th Cir. 2017), which rejected In re Chance and required a movant to show it was more likely than not that the sentence was based only on the residual clause as a historical fact. On March 2, 2018, without oral argument, the Eleventh Circuit reversed and remanded to dismiss the § 2255 Motion holding that Mr. Curry did not meet the Beeman standard because the record was silent as to the basis for the ACCA enhancement. Curry v. United States , 714 F. App'x 968 (11th Cir. 2018).
On March 7, 2018, this Court entered a Notice to the Parties clarifying that the undersigned-who sentenced Mr. Curry-used the residual clause at his sentencing. [DE 25.] The Court's practice was to apply an enhancement based on the enumerated clause only if it was readily determined that the enumerated clause applied. [Id. at 2.] If not, then the Court used the residual clause because of its broad language. [Id. ] The Court would have detailed its reasoning on the record prior to the Eleventh Circuit's opinion if the Government had lodged a more than general objection at the 2016 re-sentencing. [Id. at 3.] In light of the general objection, and because, prior to Beeman , the law did not require a specific basis to be articulated when applying the residual clause, the Court had no need to explain its reasoning. [Id. ]
On April 13, 2018, Mr. Curry sought rehearing in the Eleventh Circuit, citing this Court's Notice to the Parties. He argued that the Eleventh Circuit misapplied Beeman , and requested a remand for further findings if the record was unclear. [See Petition, at 7, 19 (Case No. 17-10822, 11th Cir.).] Without mentioning the Notice *1100 to the Parties, the Eleventh Circuit denied the request in a one-page Order on May 22, 2018.
V. Mandate
On May 25, 2018, Mr. Curry moved to stay the Eleventh Circuit's mandate due to the filing of a petition for writ of certiorari with the United States Supreme Court. Although the Government opposed, the Eleventh Circuit issued a stay on May 31, 2018. On August 20, 2018, Mr. Curry filed his Petition with the Supreme Court, which the Government opposed. The Petition was denied on January 7, 2019. The Eleventh Circuit's mandate issued on January 9, 2019. [ (Case No. 17-10822).] On February 20, 2019, before this Court was able to carry out the mandate, the Eleventh Circuit published United States v. Pickett , 916 F.3d 960 (11th Cir. 2019).
VI. United States v. Pickett
In Pickett , the defendant filed a successive § 2255 motion challenging his ACCA enhancement. Id. at 962. The district court granted the § 2255 motion using the In re Chance standard. Id. at 963, n.1. The defendant was re-sentenced to time served and the government appealed. Before any briefing took place, the Eleventh Circuit issued Beeman. Id. at 963.
Pickett focused on what the district court "actually had in its mind" and what the sentencing court relied on. Id. at 964. In answering this question, the Eleventh Circuit applied the Beeman "historical fact" test by looking at the record and caselaw at the time of sentencing. It found the record was silent and that the caselaw showed the convictions "almost certainly qualified" under the residual clause, but there were "no firm answers" about the elements clause. Id. at 964-66. Faced with this uncertainty, the Pickett court was unable to conclude that the district court only relied on the residual clause and thus found the defendant failed to meet the Beeman burden of proof. Id. at 966.
However, the Eleventh Circuit remanded the case to allow the parties to address the Beeman standard since that decision was issued after the defendant was resentenced. Id. at 967. In directing the district court to apply Beeman , the Eleventh Circuit acknowledged the sentencing judge was "obviously in a better position" to evaluate what happened at sentencing. Id.
VII. Motion Requesting Relief
On April 1, 2019, Mr. Curry filed the Motion for Relief from Mandate [DE 36], contending that Pickett now requires the Court to provide him with an opportunity to meet Beeman . Relying on the mandate rule, the Government opposes the Motion.
DISCUSSION
Mr. Curry's request, along with the timing of the Eleventh Circuit's published opinions in Beeman and Pickett , requires the Court to determine whether it should follow the unpublished law of the case, or follow the published law of the Eleventh Circuit. Resolving this conundrum requires the Court to not follow controlling law, in one way or another. The law of the case doctrine is well-established and operates to create finality, and a district court has an obligation to carry out an appellate court's mandate. See United States v. Amedeo , 487 F.3d 823, 829 (11th Cir. 2007) ; Litman v. Massachusetts Mut. Life Ins. Co. , 825 F.2d 1506, 1512 (11th Cir. 1987).
There are only three narrow exceptions to the mandate rule which a court can only use if it is certain that one of the three "specifically and unquestionably applies." [6]
*1101 Leggett v. Badger , 798 F.2d 1387, 1389 n.2 (11th Cir. 1986). Mr. Curry argues that the new controlling authority exception applies in light of Pickett . For the exception to apply, the new authority should "require a different result" and not be distinguishable from the case at hand.[7] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 1389-90 ; Amedeo , 487 F.3d at 830 ; see also Ad-Vantage Tel. Dir. Consultants, Inc. v. GTE Dir. Corp. , 943 F.2d 1511 (11th Cir. 1991). Therefore, the Court must determine whether Pickett is distinguishable from Mr. Curry's case and, if not, whether Pickett requires a different result.[8]
As a threshold issue, the Court must determine if Mr. Pickett and Mr. Curry have the same procedural history. In both cases, the Eleventh Circuit granted leave to file successive § 2255 motions, noting the unclear records and finding prima facie showings of entitlement to Johnson relief. Both district courts granted § 2255 relief applying the In re Chance standard. Mr. Curry's case went further however, because the Court stated that there was a reasonable likelihood that he also met the In re Moore standard. [DE 16 at 7 n.8.] Mr. Curry and Mr. Pickett had served over a decade in prison prior to being re-sentenced to time served. The government appealed both cases prior to Beeman ; neither defendant was able to present a Beeman argument to the district court. Thus, up until the appellate level, the cases were procedurally identical.
Therefore, in continuing to determine whether the cases are distinguishable, the Court will ascertain whether the reasoning and holding in Pickett apply to Mr. Curry's case. The Eleventh Circuit's decision to remand Pickett was based on two grounds: (1) the parties' lack of opportunity to address Beeman at the district court, and (2) the inability of the Eleventh Circuit to ascertain what the judge had in mind at sentencing. Pickett , 916 F.3d at 961, 964.
I. Mr. Curry Had Less of a Chance to Address Beeman Than Mr. Pickett
As to the first ground, Mr. Curry, just like Mr. Pickett, did not have an opportunity to be heard on Beeman at the district court level. However, Mr. Pickett was able to address Beeman in his response to the Eleventh Circuit. [Answer, Case No. 17-13476 (11th Cir. Mar. 20, 2018).] Mr. Curry, on the other hand, had already filed his response in the Eleventh Circuit when Beeman issued, so while the Government was able to address Beeman in its reply, Mr. Curry was only able to address Beeman in his petition for rehearing.[9] [Reply, *1102 Case No. 17-10822 (11th Cir. Oct. 23, 2017); Petition for Rehearing, Case No. 17-10822 (11th Cir. Apr. 13, 2018).] Therefore, if Mr. Pickett was not sufficiently heard despite including Beeman in his response to the Eleventh Circuit, it follows that Mr. Curry was not sufficiently heard on Beeman , even more so than Mr. Pickett.[10]
II. Mr. Curry's Sentencing Judge's Thought Process Shows Use of Residual Clause
The second ground for remand in Pickett was because the appellate court was unable to determine the district court's thought process. In trying to make this determination, the Eleventh Circuit applied the Beeman "historical fact" test, looking to the record and caselaw at the time of sentencing to discern what the district court had in mind. Pickett , 916 F.3d at 961, 966. The Eleventh Circuit was not seeking to determine if a conviction only qualified under the residual clause, but rather, what the sentencing judge "actually had in mind." Id. at 964. In light of the silent record and the uncertain caselaw at the time of sentencing, the Eleventh Circuit remanded because the sentencing judge was in a "better position than we are to evaluate what likely happened." Id. at 967. Like Mr. Pickett, Mr. Curry did not have the benefit of this Court's thought process prior to his appeal. The record was silent at that time, and no explanation by the sentencing judge had been given.[11] In light of Pickett , because the undersigned was Mr. Curry's sentencing judge, the Court will explain what it "actually had in mind" when it sentenced Mr. Curry.
When initially sentencing Mr. Curry, the undersigned applied the residual clause to enhance Mr. Curry's sentence. The Court routinely relied on the residual clause whenever it was not readily determined that the enumerated clause applied. Moreover, the record was silent at the time of sentencing because the law did not require the Court to specify a basis for applying the residual clause. A judge only had to articulate its basis when using the enumerated clause. See United States v. Miles , 290 F.3d 1341, 1347 (11th Cir. 2002). No such basis was put on the record here because the Court determined Mr. Curry's convictions did not readily qualify under the enumerated clause, and thus, the Court used the residual clause.
By now placing its reasoning on the record, this Court has answered the main inquiry in Pickett , which was to determine what the district court had in mind, and as such, an analysis of the record and caselaw is not necessary. However, because the controlling authority exception to the mandate rule requires the Court to determine if Pickett is indistinguishable from Mr. Curry's case, the Court will review the record and the caselaw.
A. Both Cases have an Unclear Record
In trying to determine the district court's thought process, the Pickett court first considered the record. In Pickett , the parties agreed that there was nothing in *1103 the record to tell the court which clause the district court "had in mind" when it applied the ACCA enhancement. Pickett , 916 F.3d at 964. Similarly the parties in Mr. Curry's case do not dispute that the original sentencing record was silent. Therefore, both cases have an unclear record.
B. Caselaw in Both Cases Unclear
The Eleventh Circuit next reviewed the caselaw at the time of Mr. Pickett's sentencing to determine what the district court had in mind and found Mr. Pickett's convictions "almost certainly" qualified under the residual clause, though "no binding precedent said as much at the time." Id. at 965. The Eleventh Circuit was unable to locate precedent on whether the convictions also qualified under the elements clause. Id. at 966. As a result, that Court held that due to the "uncertain precedential landscape," the district court would have "quickly determined" that the conviction qualified under the residual clause. Id. The district court would not have needed to consider the elements clause at all, but the court "genuinely [did] not know what actually happened." Id.
The same situation applies in Mr. Curry's case. The caselaw at the time of Mr. Curry's sentencing qualified Florida burglary under the residual clause. Taylor , 495 U.S. 575, 600 n.9, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Moreover, it was unclear if Mr. Curry's Florida burglary convictions also qualified under the enumerated clause.
1. Supreme Court: Not All Burglaries Qualify Under Enumerated Clause
At the time of Mr. Curry's 2005 sentencing, not all burglaries qualified under the enumerated clause because some states defined burglary more broadly than the ACCA generic burglary,[12] thus potentially disqualifying those convictions under the enumerated clause. Id. at 599-602, 110 S.Ct. 2143. Where a state defined burglary more broadly, a court could consider the "indictment or information and jury instructions" if there was a trial to show that the charge and conviction rested on generic burglary. Id. at 602, 110 S.Ct. 2143. Where a defendant pled guilty to burglary, a court could review the terms of a plea agreement or a colloquy transcript where the defendant confirmed the factual basis for the plea, or to some comparable judicial record of this information. Shepard v. United States , 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). A court must look only at the statutory definitions of prior offenses, and not to the particular facts underlying those convictions. Taylor , 495 U.S. at 600-602, 110 S.Ct. 2143. Thus, under Supreme Court precedent at the time of Mr. Curry's sentencing, not all burglary convictions qualified under the enumerated clause.[13]
*1104 2. Florida Burglary is Broader than Generic Burglary
Following the Taylor analysis, this Court reviewed the Florida burglary statute at the time of Mr. Curry's underlying convictions and found Florida's burglary statute was broader than generic burglary. [DE 16 at 7]. At those times, Florida burglary was defined as "entering or remaining in a structure or conveyance " Fla. Stat. § 810.02 (1985 & 1989). Conveyances include motor vehicles, precisely the example used by Taylor to describe a nongeneric burglary statute. Taylor , 495 U.S. at 599, 110 S.Ct. 2143. Thus, looking at the plain language of the Florida statute, because Florida burglary was broader than the generic offense, this Court found that not every Florida burglary conviction would qualify under the enumerated clause.[14]
Yet, the Government maintains that Florida burglary always qualified under the enumerated clause and takes out of context the statement in United States v. Spell , 44 F.3d 936, 939 (11th Cir. 1995), that "every burglary under the Florida statute requires the entering or remaining in a structure, " which contradicts the Florida statute's plain language that included "conveyance."[15] The issue in Spell was whether Florida's statute differentiated between "dwelling" and "structure." The court was determining whether a conviction for burglary of a "structure" could be used to enhance a sentence under the guidelines that-unlike the ACCA-required a burglary to be only of a "dwelling." Therefore, because Spell was not comparing Florida burglary to the ACCA's generic burglary, it is inapplicable.
The Government's reading of Spell demonstrates the law's murkiness at the time of Mr. Curry's 2005 sentencing. The uncertainty in the law at that time is underscored by the changes in the law shortly after Mr. Curry's sentencing. A week after Mr. Curry was sentenced, the Eleventh Circuit found attempted Florida burglary only qualified under the residual clause, and in 2006, held that Florida third-degree burglary qualified under the residual clause. United States v. James , 430 F.3d 1150 (11th Cir. 2005), aff'd , 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) ; United States v. Matthews , 466 F.3d 1271 (11th Cir. 2006). In 2007, the Supreme Court held that Florida burglary did not meet the enumerated clause's generic definition. James v. United States , 550 U.S. 192, 197, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). Since then, the Eleventh Circuit has held that Florida burglary could only have been used under the residual clause. United States v. Esprit , 841 F.3d 1235, 1241 (11th Cir. 2016). If the law was clear, those published decisions would not have been necessary. Therefore, just like Mr. Pickett's case, the caselaw at sentencing was unclear regarding whether Mr. Curry's burglary convictions qualified under the enumerated clause.
Based on the uncertain caselaw in Pickett , the Eleventh Circuit found Mr. Pickett did not meet the Beeman burden, but remanded the case to give the parties a chance to meet Beeman by showing what the sentencing judge was thinking. Similarly, *1105 the Eleventh Circuit found Mr. Curry did not meet his Beeman burden. Therefore, because the present Motion is at the district court level and before the original sentencing judge, the Court will determine if Mr. Curry meets his Beeman burden by setting out the ACCA analysis it undertook in sentencing Mr. Curry.
C. Absence of Taylor and Shepard Documents Proves Use of Residual Clause
After determining that Florida burglary was nongeneric, the next step of the ACCA analysis required the Court to determine whether Mr. Curry pled guilty to either of his underlying convictions. If he had not pled guilty, the Court would have had to review Mr. Curry's 1985 indictment for burglary, his 1989 indictment for burglary, and the jury instructions provided in 1985 and 1989. If he had pled guilty, the Court would have had to review the terms of the charging document and his plea agreement, a plea colloquy transcript, or some other comparable judicial record.
However, the Government provided none of these documents to the Court.[16] They were not in the record at the time of Mr. Curry's sentencing and are still not in the record. Accordingly, they have never been reviewed by the Court. Thus, given the record before the Court at the time of Mr. Curry's 2005 sentencing and the law, the Court could not readily determine if Mr. Curry qualified for the enumerated clause and, in keeping with its practice, applied the residual clause.
Still, the Government argues that the Court could have relied on facts in the PSR. However, Taylor made clear that the particular underlying facts of a crime must not be considered. Taylor , 495 U.S. at 600, 110 S.Ct. 2143. The Government points to United States v. Adams , 91 F.3d 114 (11th Cir. 1996), where the Eleventh Circuit, without citing any authority, allowed consideration of facts in a PSR.[17] However, Adams preceded Shepard which affirmed that underlying facts could not be used. Shepard , 544 U.S. at 19, 125 S.Ct. 1254. The Taylor and Shepard documents were designated because they approach the "certainty of conviction" and are "conclusive records made or used in adjudicating guilt." Shepard , 544 U.S. at 23, 125 S.Ct. 1254. The Curry PSR's factual descriptions of prior convictions are based on police records, which Shepard specifically found could not be considered. Id. at 22, 125 S.Ct. 1254. The Court did not, and could not, consider the facts described in the PSR because it was not a Shepard -approved document, nor a "conclusive record made or used in adjudicating guilt."[18] Id. at 21, 125 S.Ct. 1254. Therefore, the absence *1106 of these documents in the record establishes as a matter of historical fact that the undersigned used the residual clause in sentencing Mr. Curry.[19]
CONCLUSION
There is a direct conflict in the outcomes for Mr. Pickett and for Mr. Curry. Both had a silent record, unclear caselaw at the time of initial sentencing, new sentences entered prior to Beeman , appellate findings that they did not meet Beeman , and no opportunity to address Beeman - Mr. Curry more so than Mr Pickett. Yet, one case was remanded for dismissal and the other remanded for further proceedings. Mr. Curry is in a more compelling situation than Mr. Pickett because this Court's 2016 Order granting the § 2255 Motion stated there was a reasonable probability that he would meet the higher standard Beeman adopted, and as this Order establishes, Mr. Pickett does indeed meet the Beeman standard.
Although the Court recognizes its responsibility to enforce the Eleventh Circuit's mandate in Mr. Curry's case, it cannot ignore the Eleventh Circuit's decision to publish Pickett . The Eleventh Circuit puts careful thought into selecting cases with the most precedential value for publication because its policy is to use "imaginative and innovative resourcefulness" to "reduce the volume of published opinions," and therefore, "opinions the panel believes to have no precedential value are not published." 11th Cir. I.O.P. 36. Thus, the Eleventh Circuit's deliberate decision to give Pickett precedential value by its choice to publish it must be considered.
The Eleventh Circuit's emphasis in Pickett was what the district court actually had in mind. The undersigned recognizes that the Notice to the Parties detailing her thought process was entered outside of the record on appeal. Thus, although Mr. Curry's petition for rehearing mentioned the Notice, the Eleventh Circuit was under no obligation to review it and it is not mentioned in its one-page denial. Additionally, the Government specifically asked the Supreme Court to not consider the Notice, and in its denial, the Supreme Court did not comment on the Notice. As such, the record is not clear that any higher court ever reviewed or considered the Notice. Given the weight placed by Pickett on the state of mind of the sentencing judge, the undersigned is troubled that potentially no court has taken its reasoning into consideration.
Therefore, the Court finds itself in a difficult situation. While following the mandate is the easiest path to follow, that path has been blocked by the publishing of Pickett , which is undeniably similar to Mr. Curry's case and this Court cannot find any significant difference between the two. As such, the only option available to the Court to ensure that Mr. Curry's case is given a full review, particularly in light of the weight Pickett places on the sentencing judge's mindset and the historical facts that prove that this Court relied on the residual clause, is to grant Mr. Curry's Motion to ensure the correct application of *1107 the law to Mr. Curry's case.[20] Because Pickett is intervening controlling authority that specifically and unquestionably applies, this Court is authorized to decline to enforce the mandate and therefore it is
ORDERED THAT Movant's Motion for Relief from Mandate [DE 36] is GRANTED.[21]
DONE AND ORDERED in Miami, Florida, this 10th day of May, 2019.

The resulting guideline range was 262 to 327 months plus a mandatory sixty-month consecutive term for Count 3. Mr. Curry was sentenced to 262 months as to Counts 1, 2, and 4; a consecutive sixty months as to Count 3; and six years of supervised release.

Mr. Curry's underlying criminal case (No. 05-20399) is cited as [CR-DE__].

The probation officer apparently counted the three assault counts as three separate convictions for the ACCA which violated 18 U.S.C. § 924(e)(1). See also Order Granting Leave at 4 n.1 (Case No. 16-13231, 11th Cir., July 1, 2016).

Mr. Curry's first § 2255 Motion was dismissed as time-barred. Curry v. United States , Case No. 12-24393, 2014 WL 2859113 (S.D. Fla. June 23, 2014).

At the time of the 2016 re-sentencing, the law was unsettled as to the standard for reviewing ACCA predicate offenses. Two different Eleventh Circuit panels used differing standards in dicta. In re Moore required a movant to prove that he was sentenced only under the residual clause. 830 F.3d 1268, 1273 (11th Cir. 2016). In re Chance required a movant to show that the judge may have relied on the residual clause. 831 F.3d 1335 (11th Cir. 2016). As a result, district courts were divided regarding which approach to follow.

The three exceptions to the mandate rule are: (1) a subsequent trial produces substantially different evidence; (2) controlling authority has since made a contrary decision of law applicable to that issue; or (3) the decision was clearly erroneous and would work manifest injustice. Amedeo , 487 F.3d at 830.

The Government cites to United States v. White , 846 F.2d 678 (11th Cir. 1988), as an example of where the exception did not apply. [DE 38 at 5.] In White , the exception did not apply because there were key differences between the case and the new authorities.

In deference to the mandate rule and because this case involves the liberty interest of a currently free man, the Court has endeavored to be as careful as it can to ensure Pickett meets the exception. The Court did not consider non-binding authority, but notes: (1) the Eleventh Circuit's decision to apply the controlling authority exception in United States v. Puche , 155 F. App'x 487 (11th Cir. 2005) ; and (2) the Sixth Circuit's affirmance of a district court's application of the new controlling authority exception in light of ACCA-related caselaw. See United States v. Anglin , 601 F.3d 523 (6th Cir. 2010).

Petitions for rehearing are reserved for "precedent-setting errors of exceptional importance." [11th Cir. R. 35-3.]

The Government argues Mr. Curry could have addressed Beeman at the district court level by trying to meet the In re Moore standard. This argument is without merit because: (1) the In re Moore and in In re Chance standards were dicta at the time and-just like Mr. Pickett-Mr. Curry was not required to meet both standards; (2) In re Moore was available to Mr. Pickett as well, and the Eleventh Circuit still found he did not have a chance to address Beeman ; and (3) most importantly, the record at the time acknowledged that there was a reasonable likelihood that Mr. Curry could meet the In re Moore standard [DE 16 at 7 n.8].

The Court entered its Notice to the Parties [DE 25] after the Eleventh Circuit's reversal.

Generic burglary was defined as "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor , 495 U.S. at 599, 110 S.Ct. 2143.

Taylor and Shepard required a sentencing court to undertake a multi-step analysis to determine if a burglary conviction qualified under the enumerated clause: (1) compare the Florida's burglary statute's elements at the time of the underlying convictions to generic burglary; (2) determine if Florida burglary at the time of a conviction was broader than generic burglary; and (3) if Florida's statute was broader, determine if a defendant pled guilty to one of the underlying convictions. If there was no guilty plea, a court would need to review the indictment and the jury instructions to ensure the defendant was charged with and convicted of generic burglary. If there was a guilty plea, a court would need to review the charging document, the plea agreement, the transcript of a plea colloquy, or some other comparable judicial record to confirm the defendant pled to generic burglary. This detailed process underscores why this Court applied the residual clause when it could not readily apply the enumerated clause.

Binding case law at the time of sentencing also held that Florida burglary encompassed both generic and non-generic burglary. United States v. Adams , 91 F.3d 114, 115 (11th Cir. 1996).

In Spell , the court cites the 1994 statute, but the conviction at issue took place in 1980. The 1980 statute's language also includes "conveyance."

The Government bears the burden to introduce evidence that a defendant has three predicate offenses. United States v. Ruo , 943 F.2d 1274, 1276 (11th Cir. 1991) ; see Francisco v. U.S. Att'y Gen. , 884 F.3d 1120, 1123 (11th Cir. 2018) ; United States v. McCloud , 818 F.3d 591, 597 (11th Cir. 2016).

The Government mostly cites cases that post-date Mr. Curry's sentencing or are unpublished. Beeman is clear that a "historical test" applies, and thus, cases that post-date Mr. Curry's sentencing are not helpful. Given the import of Mr. Curry's request, the Court will only consider cases purposefully given precedential value by being published. In keeping with Pickett , the Court will not consider unpublished cases or those that came after Mr. Curry's sentencing.

There were other published cases in the Eleventh Circuit at the time of Mr. Curry's sentencing that forbade the consideration of facts in a PSR in applying a sentencing enhancement. See United States v. Wilkerson , 286 F.3d 1324, 1325 (11th Cir. 2002) ; United States v. Fulford , 267 F.3d 1241, 1251 (11th Cir. 2001) ; United States v. Oliver , 20 F.3d 415, n.4 (11th Cir. 1994) ; United States v. Gonzalez-Lopez , 911 F.2d 542, 551 (11th Cir. 1990).

Although the Court did not rely on unpublished opinions, it notes the abundant decisions of the Eleventh Circuit to remand a case for further findings where a district court did not have an opportunity to apply the Beeman standard. Carmichael v. United States , 758 F. App'x 860, 863 (11th Cir. 2019) ; Winfrey v. United States , 743 F. App'x 393, 400 (11th Cir. 2018) (specifically noting that the district court judge was the sentencing judge); Gomez v. United States , 743 F. App'x 344, 347 (11th Cir. 2018) ; United States v. North , 738 F. App'x 683, 686 (11th Cir. 2018) ; French v. United States , 732 F. App'x 836, 839 (11th Cir. 2018) ; Dixson v. United States , 724 F. App'x 896, 898 (11th Cir. 2018) ; Brooks v. United States , 723 F. App'x 703, 706 (11th Cir. 2018).

Although irrelevant to the Court's analysis, it is noteworthy that Mr. Curry, age 57, has been released into the community for more than two years, and not had any revocations. He has a stable job with a national company, established a stable residence, works in the community as a minister, and has been in complete compliance with all conditions of supervised release.

Because the Court finds Pickett meets the controlling authority exception, it is unnecessary to determine if the "clearly erroneous" exception applies.